IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

___

SHARRYL SMITH,

    Plaintiff,

Vs.                                          No._____

SOUTHWEST TENNESSEE COMMUNITY COLLEGE,       Division_____

    Defendant.                               A JURY IS REQUESTED

___

COMPLAINT

___

I.

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to:

    (a)    28 U.S.C. 1331 because the case arises under the Constitution and laws of the United States;

    (b)    28 U.S.C. 1343, because this action seeks redress and damages for violation of 42 U.S.C. 1983 and 1985 and, in particular, the due process and equal protection provisions of the United State Constitution, including the rights protected by the Fifth and Fourteenth Amendments thereof; and,

    (c)    Claims also are stated under the Tennessee Hunan Rights Act against the Defendant.

    (d)    The supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1367 over the State Law claims which are so related to the federal claims in the action that they are from part of the same case or controversy under Article III of the Constitution of the United States of America.

2. Venue is appropriate in this judicial district under 28 U.S.C. 1391(b), because Defendant, Southwest Tennessee Community College, is located in this District and the events giving rise to this Complaint occurred here.

## II.

## THE PARTIES

3. Plaintiff, Sharryl Smith (hereinafter, "Smith") is a citizen of the State of Tennessee, residing in Memphis.

4. Defendant, Southwest Tennessee Community College (hereinafter, "Southwest") is an College in the State of Tennessee operating under the Tennessee Board of Regents.

## III.

## FACTS

5. Smith was hired by Southwest by on November 3, 2008, in the job category of Police Officer I.

6. During the time of the alleged events in March and April, 2010, Smith worked under the immediate supervision of Police Supervisor, Michael Harris (hereinafter, "Harris").

7. On March 29, 2010, Smith approached Harris to ask him about a jobs that she had heard would be eliminated.

8. Harris responded to Smith that the only thing he needed was to hear her ask him to engage in a specific sex act, accompanied by Harris making hip gestures of a suggestive nature.

9. Smith began efforts to contact her Union representative so that corrective measures could be taken against Harris.

10. In an interoffice memorandum dated June 17, 2010, Southwest stated that Smith first made them aware of her complaint in an email to Linda Stanback, Assistant Director, on April 2, 2010.

11. On March 31, 2010, Harris, for the first time, issued Smith a letter allegeing that she was in violation of College Policy on March 29, 2010 when the alleged harassment took place.

12. Harris offered no supporting witness for his allegation that Smith violated the Code of Conduct, nor did he allege that there had ever been any previous incidents of insubordination prior to this letter.

13. On April 19, 2010, James H. Bolden, Director of Police/Public Safty issued a memorandum to Smith stating that his investigation determined that the complaint of Smith could not be sustained.

14. On April 21, 2010, Smith filed a complaint alleging sexual harassment and retailiation with the Office of Human Resources.

15. Immediately after the sexual suggestions of Harris, Smith confided to several of her co-workers about the harassment by Harris, which co-workers observed her emotional distress over the incident.

16. As a result of the unlawful acts of Harris and the failure to act by Southwest, Smith had endured a period of substantial psychological distress and embarrassment.

17. On June 10, 2010, Smith resigned her position at Southwest after learning that corrective action would not be taken such that she would not continue to encounter Harris in the workplace, which resignation has the effect of constructive termination because of the failure of Southwest to protect the rights of Smith and provide a workplace free from harassment.

18. Because of the constructive termination, Smith lost all future pay, together with reasonably expected pay raises and promotions because Southwest failed to provide a workplace free from harassment.

19. Investigation of this claim revealed evidence and testimony that Harris had on at least one other occasion made comments and requests of a sexual nature to another employee.
20. Harris took immediate detrimental action against Smith after his unlawful conduct in an attempt to silence her and retaliate against her.
21. Smith filed a sexual harassment complaint with the Equal Employment Opportunity Commission, which claim was denied and "right to sue" letter issued on January 25, 2011.

IV.

COUNT 1: DEPRIVATION OF CONSTITUIONAL RIGHTS AND PRIVILIEGES (42 U.S.C. 1983)

22. Smith incorporates by reference paragraphs 1-21 as if set forth specifically herein.
23. Smith is entitled to equal protection of the laws under the Fourteenth Amendment of the United States Constitution and due process of law under the Fifth and Fourteenth Amendments of the United States Constitution.
24. Harris as an officer and employee of Southwest acted under color of law in discriminating against Smith because of her gender by sexually harassing and assaulting her on March 29, 2010, and this deprived Smith of her right to equal protection under the law.
25. Further, even after the complaint by Smith, Southwest continued to operate in a manner that deprived her of her Constitutional right to a workplace free from unwanted and harassing conduct.
26. Harris took immediate negative job actions against Smith after his unlawful conduct in an attempt to retaliate against Smith and silence her.

4

27. Smith, as a citizen of the United States and the state of Tennessee was entitled to due process rights to protect her rights and interests guaranteed by the U.S. Constitution.

V.

COUNT II:   DEPRIVATION OF RIGHTS UNDER THE TENNESSEE HUMAN RIGHTS ACT

28. Smith incorporates by reference paragraphs 1-27 as if set forth specifically herein.
29. The Tennessee Human Rights Act guarantees Smith as a citizen of Tennesseee the right to be free from unwanted sexual conduct in the workplace and to work in an atmosphere free from discriminatory treatment.
30. The Tennessee Human Rights Act guarantees Smith to be free from retaliation for attempting to enforce her lawful rights.

WHEREFORE PREMISES CONSIDERE, Plaintiff requests this Honorable Court:
1. Issue notice and service upon Defendant causing them to appear and give answer as to why the requested relief should not be granted.
2. That Smith be awarded compensatory damages for matters including lost wages, emotional suffering and other compensable matters in an amount of not less than $100,000.00;
3. That Smith be awarded compensation for lost future wages, including the loss of reasonably anticipated promotion and pay raises in an amount of not less than $1,000,000.00.
4. That Smith be awarded punitive damages because of the failure of Defendant to provide a lawful workplace free from harassment even after being given notice and to prevent retaliatory conduct against those who seek to enforce their lawful rights, in the amount of $3,000,000.00.

5. That Smith be awarded her reasonable attorneys fees and costs of this action;

6. That a jury be seated to hear this matter.

7. For other such general and further relief as the cause of justice may require.

Respectfully submitted:

/s/ Mark M. Wright_____

Mark M. Wright (BPR 21772)

The Wright Law Office

1331 Union Ave.

Suite 1147

Memphis, TN 38104

901.297.9500

[mark@markmwright.com](mark@markmwright.com)

AFFIDAVIT OF PLAINTIFF

I, Sharryl Smith, do herby affirm that the fact and allegations contained in this complaint are true to the best of my knowledge.

/s/Sharryl Smith